**Jack SPEARMAN, Plaintiff,**

v.

**J & S FARMS, INC., Defendant.**

**Civ. A. No. 8:89–730–17.**

United States District Court,
D. South Carolina,
Anderson Division.

Feb. 8, 1990.

Alexander S. McCaulay, Walhalla, S.C., for plaintiff.

William Douglas Gray, James W. Logan, Anderson, S.C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

JOE F. ANDERSON, Jr., District Judge.

This is a declaratory judgment action tried by the court non-jury on December 20, 1989. This action is the sequel to a products liability action tried in this court two years ago, *Spearman v. Apache Building Products,* Civil Action No. 8:86–1504–17 (products action), in which the jury returned a verdict of three hundred thirty two thousand five hundred and no/100 ($332,500.00) dollars in actual damages and nine million and no/100 ($9,000,000.00) dollars in punitive damages. The parties to this action were the named plaintiffs in the products action. The present controversy arose as a result of dispute between the parties as to their respective entitlement to the jury's verdict.

Cross motions for summary judgment were heard and denied; however, as it appeared that most of the facts underlying the action were undisputed, the parties agreed to and did enter stipulations of facts as to the majority of the factual issues before the court. As to the few remaining factual questions upon which stipulations could not be reached, the parties requested that the court permit them to waive their hearsay objections and submit affidavits as substantive evidence. In an effort to accommodate the parties in their attempt to reduce the cost of litigation, the court acquiesced.

After carefully considering the stipulations of fact, the affidavits, and the arguments and briefs of counsel, this court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52, *Fed.R.Civ.P.* The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

## FINDINGS OF FACT

1. Jack Spearman is a resident of Oconee County, South Carolina.

2. J & S Farms, Inc. (J & S Farms) is a corporation incorporated under the laws of the State of Georgia with its principal place of business in the State of Georgia.

3. In 1985 Spearman owned and operated a chicken barn in Oconee County, South Carolina in which J & S Farms maintained its flock of over 28,000 birds. The chicken barn, birds, and other incidental items were destroyed by fire on December 20, 1985.

4. The loss which J & S Farms experienced as a result of the fire was partially covered by insurance. J & S Farms submitted a proof of loss to its insurer, Glens Falls Insurance Company (Glens Falls), showing a loss of $26,908.57. Of this amount, $23,951.97 was allocated to the loss of the chickens and was determined by reference to a schedule, adopted as a part of the "agreed value" insurance contract between J & S Farms and Glens Falls. Under the schedule the amount recoverable for loss of chickens was determined by reference to a set of agreed upon values for birds of various ages. The balance of the insurance claim was for removal of dead chickens from the Spearman facility, a cost Spearman sought to pass on to J & S

Farms. J & S Farms received $26,658.57 from Glens Falls—the amount of the claim submitted less J & S Farms' deductible of $250.00.

5. The fire resulted in the products litigation, referenced above, against Apache Building Products, the producer of an insulation product installed in Spearman's chicken barn. Spearman originally brought the action solely in his own name, however, during the course of the litigation, Spearman moved the court to amend his pleading to add J & S Farms as a party plaintiff pursuant to *Fed.R.Civ.P.* 19 and to amend his complaint to include the J & S Farms loss. The court granted Spearman's motion, adding J & S Farms, Inc. and amending the complaint, by Order dated December 22, 1986. The caption of the products action thereafter contained Jack Spearman and J & S Farms, Inc. as party plaintiffs.

6. The products case proceeded to trial before a jury. During the trial it was stipulated that had representatives of J & S Farms been called, they would have testified that J & S Farms sustained a loss as a result of the fire in the amount of $32,500.00.

Although J & S Farms had only claimed $26,908.57 from its first party insurance carrier, the loss stipulated to at trial was greater than the insurance claim for two reasons: (1) J & S believed the birds to be worth more than the agreed upon values established in the insurance contract and (2) J & S Farms apparently lost other property in the fire, such as grain and eggs, which were not covered under the Glens Falls policy.

7. Before the verdict form was submitted to the jury in the products action, the court inquired of the attorneys whether separate verdict forms for the respective

plaintiffs were needed. The attorney for the plaintiffs, Mr. Fetterly, represented to the court that separate verdict forms were unnecessary, and the case should be submitted to the jury with a verdict form which permitted the jury to find: (1) for the plaintiffs jointly for actual damages; (2) for the plaintiffs jointly for actual and punitive damages, or; (3) for the defendant. The jury returned a verdict, and judgment was entered, in the favor of the plaintiffs in the amount of $332,500 in actual damages and $9,000,000 in punitive damages.

8. Upon the Apache Building Products' post-trial motions, this court ordered a remittitur of the punitive damages portion of the jury's verdict to $3,000,000.[1] The plaintiffs accepted the remittitur and Apache appealed.

9. During the pendency of the products action appeal, the parties to the products case reached a settlement of the matter for $2,065,498.28. All of the parties were eager for a settlement of the products case, but a dispute had arisen as to the respective interests of the parties in the jury's verdict, as remitted. Therefore, Spearman and J & S Farms both executed a release in favor of Apache Building Products reserving their rights to resolve their entitlement in the original fund.

10. The present action was filed by Jack Spearman seeking a declaration of his rights in the jury's punitive damages verdict, as remitted. During trial, it became apparent that a dispute also existed over the proper division of the actual damage award. For this reason, the court granted J & S Farms' motion to amend its pleadings to seek a declaration of the rights of the parties in the jury's actual damages verdict as well.

[1]. At first glance, such a punitive damage award in a property damage case might seem excessive. However, this was not an ordinary property damage case. The testimony at trial revealed a particularly egregious course of conduct by the defendant over a substantial period of time. Defendant's (Apache's) product was marketed as being "self extinguishing" whereas in fact it was highly flammable. In the 1970's, the Federal Trade Commission brought suit against Apache to enjoin the use of the "self extinguishing" claims. Apache entered a consent order and agreed to warn its customers. Apache did not warn its past customers and several serious fires were experienced by customers, including Spearman, who were not apprised of the danger. For a more complete discussion of the evidence supporting the punitive damage award, see this court's remittitur order dated October 31, 1988.

11. The parties stipulated that the fee agreement, to which Glens Falls' adjuster, Mike Gates, consented on behalf of J & S Farms, is binding upon J & S Farms.

## CONTENTIONS OF THE PARTIES

Spearman brought this action seeking a declaration that he alone is entitled to the entire punitive damage award and contending he is entitled to the actual damages awarded by the jury over and above the $26,658.57 paid to J & S Farms by Glens Falls, on the theory that J & S Farms did not appear in, nor was it a party to, the prior action. Spearman argues that only Glens Falls, seeking to recover the amount of its subrogated interest, made an appearance in the products action.

J & S Farms argues, first, that it was a party to the products suit, having been joined to the action upon Spearman's motion. Next, J & S Farms argues that, in any event, judgment was entered in the products action in favor of J & S Farms. J & S Farms further argues that Spearman is seeking merely a construction of the judgment, and is not seeking to collaterally attack the judgment; therefore, the judgment entered is conclusive as to the matters before the court.

## CONCLUSIONS OF LAW

It is appropriate to note at this point that Spearman seeks a declaration of his rights under the prior judgment; he does not seek relief from, or to alter, the prior judgment. Moreover, the intervening settlement of the action precludes any alteration of the verdict.

▮ The resolution to this action is to be found in the judgment rendered in the prior action which must be construed in order to determine its effect. A judgment which is clear and unambiguous must be given its plain meaning and consequent legal effect. It may not be collaterally attacked under the guise of "construction." In construing the judgment, general rules for the construction of written instruments are applicable. *Gurley v. Lindsley*, 459 F.2d 268 (5th Cir.1972). Thus, if the judgment is clear and unambiguous, this court must adopt, and give effect to, the plain meaning of the judgment; however, if the judgment is ambiguous, this court must construe its meaning, and in so doing may resort to the record upon which the judgment was based. *Security Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062 (10th Cir.1980); *S(c)holtz v. Hartford Accident & Indemnity Co.*, 88 F.2d 184 (5th Cir. 1937); *Ferd Brenner Lumber Co. v. Davis*, 9 F.2d 960 (W.D.La.1925).

The judgment rendered in the products action clearly and unambiguously names J & S Farms, Inc. as a party, jointly with Jack Spearman. Consequently, J & S Farms necessarily acquired rights in the judgment awarded.

Spearman argues the judgment is ambiguous. This ambiguity arises, argues Spearman, because, although J & S Farms' name appears in the judgment, J & S Farms' insurer, Glens Falls, which, as a subrogee, would not be entitled to share in a punitive damage award, was actually the party to the prior action, and was merely suing in the name of J & S Farms to recover the monies it paid its insured.

Even if this court were to have concluded that the prior judgment was ambiguous, and reference to the record in the prior action was necessary in order construe the judgment, the court would still be constrained to conclude that J & S Farms was a party to the prior action.

This court specifically added J & S Farms, Inc. as a party to the products case. *Spearman v. Apache Building Products*, 86–1504–17 (D.S.C. Dec. 22, 1986). In a later Order this court specifically recognized that "J & S Farms, Inc., the owner of the birds destroyed in the fire, was added as a co-plaintiff after the [products] action was initiated." *Spearman v. Apache Building Products*, 86–1504–17 (D.S.C. Oct. 31, 1988) (fn. 1).

▮ Further, under South Carolina law, when an insurer pays to its insured a portion of a covered loss, the insurer becomes subrogated, as a matter of law, to the rights of its insured. *Calvert Fire Ins. Co. v. James*, 236 S.C. 431, 114 S.E.2d 832

(1960); *Powers v. Calvert Fire Ins. Co.,* 216 S.C. 309, 57 S.E.2d 638 (1950). However, where the insurer pays merely a portion of the insured's loss, as where a deductible is borne by the insured, the insurer may not bring an action against the tortfeasor distinct from that of the insured, because the insured's right of action is single and indivisible, even though the insurer is subrogated to the rights of the insured to the extent of the loss paid. *Calvert Fire Ins. Co. v. James,* 114 S.E.2d 832; *Pringle v. Atlantic Coast Line R. Co.,* 212 S.C. 303, 47 S.E.2d 722 (1948).

■ Having concluded, as a factual matter, that J & S Farms sustained a loss greater than the amount it was paid by Glens Falls (because J & S Farms did not recover the deductible portion of the loss, and because J & S Farms actually sustained a loss greater than the coverage under its insurance policy), Glens Falls, could not, as a matter of law, have brought a distinct and separate action in J & S Farms' name. The right of action against Apache Building Products was indivisible. Thus, this court's Order joining J & S Farms as a party to the products action, putting aside the plain meaning of the Order, could have had no other effect than to bring the interests of J & S Farms before the court.

Because this court's prior orders unambiguously made J & S Farms a party to the prior proceeding, and because those orders may not be interpreted as merely adding J & S Farms' insurer as a party, Spearman's contention that J & S Farms acquired no rights in the judgment is without merit. The plain meaning of the judgment entered in the products action confers rights upon J & S Farms in the amount awarded by the jury.

The fact that J & S Farms personnel were not called as witnesses in the case is of no consequence. The evidence clearly disclosed that J & S Farms was consulted prior to trial about the extent of its claim, and its representatives were on stand-by during trial to testify as to the loss if necessary. The stipulation by plaintiffs' counsel and the defendant in the products

action eliminated the need to call J & S Farms' witnesses.

J & S Farms' presence in the products action became the law of the case, and may not be relitigated at this juncture. *Cf. Sejman v. Warner–Lambert Co., Inc.,* 845 F.2d 66 (4th Cir.1988).

■ Having concluded that J & S Farms is entitled to some portion of the judgment, the court must determine the extent of the parties' rights in the fund.

Judgment was entered for actual damages in the amount of $332,500 in favor of both plaintiffs, Spearman and J & S Farms, jointly. The judgment is therefore ambiguous as to what amount was awarded to each respective party, and thus, the record must be considered in order to determine the appropriate amount.

The only damage testimony which was presented to the jury in the products case which related to the damages of J & S Farms was the uncontradicted stipulation that J & S Farms' damages were $32,500. On the other hand, Spearman presented evidence, which was sharply disputed, that the value of his chicken barn, and thus his loss, was approximately $500,000. Evidence was presented by the defendant in the products case that Spearman's chicken barn was actually worth far less than the amount claimed by Spearman. The only reasonable construction to be placed upon the judgment, in the light of the underlying record, is that J & S Farms is entitled to $32,500 in actual damages and Spearman is entitled to the remaining $300,000 awarded as actual damages.

The punitive damages portion of the judgment is more problematic. Again this portion of the judgment is ambiguous and the underlying record must be considered in order to determine the parties' respective interests therein. The underlying record, however, provides little assistance in determining the amount of the award which should be allocated to the respective parties.

■ Under South Carolina law, there is no mathematical formula to determine a proportional relationship which actual dam-

**142**

ages must bear to punitive damages, since they serve different purposes. Actual damages serve to compensate the victim while punitive damages serve to punish the tortfeasor and deter similar behavior by others. *Gilbert v. Duke Power Co.*, 255 S.C. 495, 179 S.E.2d 720 (1971); *Payne v. Bouharoun*, 292 S.C. 390, 356 S.E.2d 438 (Ct.App.1987). Punitive damages also serve to vindicate a private right which has been violated by the tortfeasor's conduct. *Harris v. Burnside*, 261 S.C. 190, 199 S.E.2d 65 (1973). The appropriate amount of punitive damages to be assessed against the wrongdoer is determined by the jury on the basis of three factors: (1) the character of the tort committed; (2) the punishment necessary; and (3) the ability of the wrongdoer to pay. *Patterson v. Bogan*, 261 S.C. 87, 198 S.E.2d 586 (1978).

The application of these rules of law to circumstances of the parties based upon the record in the products case places both parties in an identical position. The character of the wrong committed, the sale of an unreasonably dangerous insulation product, relates to the conduct of the wrongdoer, not the actions of or damages to the victims. The wrongdoer's ability to pay and the need for punishment, again, both relate to the wrongdoer and can not be a basis upon which to differentiate among the plaintiffs. Both parties had a private property damage injury for which they sought vindication.

The court has been directed to no controlling authority, nor has the court been able to locate such authority upon its independent search, which addresses the question of the proportional allocation of a joint punitive damage award. Therefore, without a factual or legal basis upon which to distinguish between the parties as to the division of the award, the court finds that, when judgment is entered for punitive damages in favor of two plaintiffs jointly, the parties shall share the award equally as a matter of law and equity.

## CONCLUSION

For the reasons set forth above the court finds:

1. Jack Spearman is entitled to three hundred thousand and no/100 ($300,000.00) dollars of the actual damage award; J & S Farms, Inc. is entitled to thirty two thousand five hundred and no/100 ($32,500.00) dollars of the actual damage award.

2. The punitive damages award should be divided equally between Jack Spearman and J & S Farms, Inc.

IT IS SO ORDERED.